Jacob L. Houmand, Esq. (NV Bar No. 12781)
Email: jhoumand@houmandlaw.com
Bradley G. Sims, Esq. (NV Bar No. 11713)
Email: bsims@houmandlaw.com
HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone:    702/720-3370
Facsimile:    702/720-3371

*Counsel for Shelley D. Krohn, Chapter 7 Trustee*

*Electronically Filed On: April 16, 2021*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>JOHN ELVIS MAYOL,<br><br>Debtor. | Case No. BK-S-20-15171-NMC<br>Chapter 7<br><br>**OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS PURSUANT TO 11 U.S.C. § 522(l) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 4003**<br><br>Date of Hearing:    May 18, 2021<br>Time of Hearing:    2:00 p.m.<br>Place: Courtroom No. 3, 3rd Floor<br>       Foley Federal Building<br>       300 Las Vegas Blvd., S.<br>       Las Vegas, NV 89101<br><br>Judge: Honorable Natalie M. Cox[1] |

Shelley D. Krohn (the "Trustee"), the duly appointed Chapter 7 Trustee in the above-captioned bankruptcy case, by and through her counsel, Jacob L. Houmand, Esq. and Bradley G. Sims, Esq. of the Houmand Law Firm, Ltd., hereby submits this *Objection to Debtor's Claim of Exemptions Pursuant to 11 U.S.C. § 522(l) and Federal Rule of Bankruptcy Procedure 4003* (the "Objection").

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure will be referred to as "FRCP" and the Federal Rules of Bankruptcy Procedure will be referred to as "FRBP." The Local Rules of Practice for the United States Bankruptcy Court for the District of Nevada shall be referred to as the "Local Rules".

-1-

The Objection is based on the following Memorandum of Points and Authorities and the *Declaration of Shelley D. Krohn In Support of Objection to Debtor's Claim of Exemptions Pursuant to 11 U.S.C. § 522(l) and Federal Rule of Bankruptcy Procedure 4003* (the "Trustee Declaration"), which is filed separately and concurrently with this Court pursuant to Local Rule 9014(c)(2). The Objection is also based on the pleadings and papers on file herein and any argument that may be entertained at the hearing on the Objection.[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This Objection seeks an order disallowing and/or reduce the homestead exemption claimed by John Elvis Mayol (the "Debtor"), the debtor in the above-referenced bankruptcy case, pursuant to Section 522(o). As detailed herein, the Debtor has engaged in substantial fraud and deceit with respect to his creditors. The Debtor cashed out a non-exempt certificate of deposit and then used those funds to pay down his mortgage. The Debtor then spent the next several months accumulating credit card debt that he never intended to repay. The Debtor is attempting to utilize the Nevada Homestead exemption in furtherance of fraud and his exemption should be disallowed.

### II.    JURISDICTION AND VENUE

The Court has jurisdiction over the bankruptcy case and the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Pursuant to Local Rule 9014.2, if the Court determines that absent consent of the parties the Court cannot enter final orders or judgment regarding the Motion consistent with Article III of the United States Constitution, the Trustee consents to entry of final orders and judgment by this Court. Venue before this Court is appropriate under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in the Motion is FRBP 4003, Section 522(o), and Section 522(p).

---

[2] The Trustee also requests that the Court take judicial notice of all pleadings filed in the above-referenced bankruptcy case, including adversary proceedings, pursuant to Federal Rule of Evidence 201, incorporated by reference by FRBP 9017.

-2-

### III.  STATEMENT OF FACTS

1. On October 15, 2020 (the "Petition Date"), the Debtor filed a voluntary bankruptcy pursuant to Chapter 7 of Title 11 of the United States Code [ECF No. 1].[3]

2. On October 15, 2020, the Debtor filed his Schedule A/B, listing, *inter alia*, an interest in real property described as 3604 Brandy Creek Ct., North Las Vegas, Nevada 89032 (the "Property") with an estimated value of $357,770.00 [ECF No. 1] p. 14.

3. In the section of Schedule A/B that required the Debtor list all "cars, vans, trucks, tractors, sport utility vehicles, motorcycles" the Debtor listed an interest in a 2019 Chevrolet Silverado and a 2018 Carr 2W Utility Trailer. No other vehicles are listed. *See* [ECF No. 1] p. 15.

4. In the section of Schedule A/B entitled "Deposits of Money" the Debtor listed savings account with Navy Federal Credit Union ending in 2670 that was opened in May of 2020, and a checking account with Navy Federal Credit Union ending in 5836 that was opened June 2020. No other bank accounts are listed. *See* [ECF No. 1] p. 16-17.

5. On October 15, 2020, the Debtor filed a Schedule C claiming an exemption in, *inter alia*, the Property in the amount of $108,675.00 pursuant to NRS §§ 21.090(1)(l), 115.005, 115.010, 115.050 [ECF No. 1] p. 20.

6. On October 15, 2020, the Debtor filed a Schedule D, listing a debt with Navy Federal Credit Union in the amount of $249,095.00, secured by the Property [ECF No. 1] p. 23.

7. On October 15, 2020, the Debtor filed a Schedule E/F, listings unsecured debts in the total amount of $179,648.00 [ECF No. 1] p. 45.

8. On October 15, 2020, the Debtor filed his Schedule J identifying his monthly expenses, including a monthly mortgage payment in the amount of $1,327.00 [ECF No. 1] p. 50.

9. On October 15, 2020, the Debtor filed his Statement of Financial Affairs. The Debtor listed his income from operation of a business the prior three years as $16,067.00 for 2020, $105,461.00 in 2019, $138,491.00 in 2018. The Statement of Financial Affairs represents that the Debtor had no other source of income during those three years.

---

[3] All references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket maintained by the clerk of the court.

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

10. In response to Question 18 in the Statement of Financial Affairs, the Debtor stated that he did not "sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business of financial affairs" within the two-year period preceding the Petition Date.

11. With regard to financial accounts closed the year before the petition date, the Debtor disclosed only a bank account held at J.P. Morgan Chase that was closed on or about January 1, 2020. [ECF No. 1] p. 53-59.

12. On October 15, 2020, the Trustee was appointed as the Chapter 7 Trustee in the Debtor's bankruptcy case [ECF No. 7].

13. On November 18, 2020, the Trustee continued the 341(a) meeting of creditors to December 16, 2020 [ECF No. 16].

14. On December 8, 2020, the Debtor filed an amended Schedule E/F [ECF No. 18], listing unsecured debts in the total amount of $ 147,239.00.

15. On December 16, 2020, the Trustee continued the 341(a) meeting of creditors to January 22, 2021 [ECF No. 18].

16. In connection with the Debtor's 341(a) meeting of creditors, the Trustee requested certain documents from the Debtor, including:

    a.    A copy of the Bankruptcy Questionnaire.

    b.    A copy of a domestic support order.

    c.    A copy of the Debtor's credit report.

    d.    A list showing amounts of credit card repayments going back one year from the petition date for any payment over $600.00.

    e.    A profit and loss for the Debtor's current business, broken down by month, with expenses itemized.

    f.    A list of vehicles, quads, motorcycles, etc., sold by the Debtor in the one-year preceding the Petition Date.

    g.    The Debtor's records from Facebook Market and Offerup in the one-year preceding the Petition Date.

        h.        The Debtor's records from Zelle, Venmo, and PayPal in the one-year period preceding the Petition Date.

        i.        The Documents from the purchase of the Debtor's house, particularly those evidencing the down-payment.

        j.        The bank statements which evidence the amount and payment of the down-payment of the house.

        k.        A current mortgage statement.

17.    In response to the Trustee's requests, the Debtor provided a number of documents, including the closing disclosure for the Debtor's Purchase of the Property (the "Disclosure").

18.    The Disclosure shows that the Debtor purchased the Property on or about April 16, 2019 for a total purchase price of $338,480.00. The Debtor funded the purchase of the Property with a loan (the "Loan") in the amount of $318,956.00. A true and correct copy of the Disclosure is attached to the Trustee's Declaration as **Exhibit "1"**.

19.    In response to the Trustee's request for documents, the Debtor also provided a profit and loss statement (the "Profit and Loss"). The Profit and Loss is not itemized and provides no documentary support for the income and expenses claimed. A true and correct copy of the Profit and Loss is attached to the Trustee's Declaration as **Exhibit "2"**.

20.    In addition to documents requested by the Trustee, the Debtor also provided a written Declaration (the "First Declaration") which purports to explain the absence of certain documents requested by the Trustee.

21.    The First Declaration States: "Regarding the list of vehicles, quads, motorcycles, etc. sold by the Debtor in the last year: I have not sold any vehicles, quads, or motorcycles in the last year so there is no list to provide." A true and correct copy of the First Declaration is attached to the Trustee's Declaration as **Exhibit "3"**.

22.    On January 22, 2021, the Debtor appeared for his continued 341(a) meeting of creditors. The Debtor provided multiple false and misleading answers to questions. Among other false and misleading statements, the Debtor denied having made large payments towards his mortgage, denied selling motorcycles, and insisted that his only source of income was from repair

-5-

of motorcycles and from the sale of parts.

23. On January 22, 2021, the Trustee concluded the Debtor's 341(a) meeting of creditors [ECF No. 39].

24. On or about January 25, 2021, the Trustee made a final document request from the Debtor. The documents requested by the Trustee included the following: (a) complete banking records for the one-year preceding the Petition Date; (b) statements for the Debtor's Venmo Account; (c) a profit and loss statement for 2019; and (d) statements for certain credit accounts of the Debtor, including: Citibank Card – Acct – 2315 - Opened March 2020, Citibank Card – Acct – 4983 - Opened May 2019, GM Financial – Acct 7557 - Opened August 2019, JP Morgan Chase Card – Opened January 1, 2019 (collectively, the "Credit Accounts").

25. On or about February 2, 2021, the Debtor provided a second declaration (the "Second Declaration"). A true and correct copy of the Second Declaration is attached to the Trustee's Declaration as **Exhibit "4"**.

26. Contrary to the Debtor's earlier statements, in the Second Declaration, the Debtor admits that he did sell motorcycles in the year prior to bankruptcy, however the Debtor alleges that he only sold motorcycles for other people. The Debtor claims that the money received from these sales is included in the un-itemized profit and loss statement he provided to the Trustee.

27. Within the Second Declaration, the Debtor disclosed that he made large payments towards his mortgage in June and July 2019 of $8,002.00 and $63,059.00 respectively. Contrary to his sworn statement that he did not remember the amount or source of extra payments, the Second Declaration asserts that the funds originated from the liquidation of a previously undisclosed certificate of deposit.

28. On or about January 25, 2021, the Trustee filed an *Ex Parte Motion for 2004 Examination of the Person Most Knowledgeable of Loancare, LLC Pursuant to Federal Rule of Bankruptcy Procedure 2004* [ECF No. 40].

29. On or about January 25, 2021, the Court entered an *Order Granting Ex Parte Motion for 2004 Examination of the Person Most Knowledgeable of Loancare, LLC Pursuant to Federal Rule of Bankruptcy Procedure 2004* [ECF No. 42].

30. On or about January 25, 2021, the Trustee filed a *Notice of Subpoena Pursuant To Federal Rule Of Bankruptcy Procedure 9016 And Federal Rule Of Civil Procedure 45 On The Person Most Knowledgeable Of Loancare LLC*, that provided notice of a subpoena for the production of documents to be served upon Loancare, LLC [ECF No. 46] (the "Loancare Subpoena").

31. On or about February 9, 2021, the Trustee filed a *Notice of Subpoena of the Person Most Knowledgeable of Citibank, N.A.* that provided notice of a subpoena for the production of documents to be served upon Citibank, N.A. [ECF No. 55] (the "Citibank Subpoena").

32. On or about February 9, 2021, the Trustee filed a *Notice of Subpoena of the Person Most Knowledgeable of JP Morgan Chase Bank, N.A.* that provided notice of a subpoena for the production of documents to be served upon JP Morgan Chase Bank, N.A. [ECF No. 57] (the "Chase Subpoena").

33. On or about February 23, 2021, the Trustee filed a *Notice of Subpoena issued Pursuant to Federal Rule of Bankruptcy Procedure 9016, Federal Rule of Civil Procedure 45, and Local Rule 9016(b) of the Person Most Knowledgeable of Navy Federal Credit Union* that provided notice of a subpoena for the production of documents to be served upon Navy Federal Credit Union [ECF No. 63] (the "NFCU Subpoena").

34. Based upon documents provided in response to the NFCU Subpoena, The Trustee was able to identify previously undisclosed bank accounts held by the Debtor.

35. The Debtor previously held a bank account with Navy Federal Credit Union ("NFCU"), ending in 4199 (the "4199 Account") and another account with NFCU ending in 9800 (the "9800 Account").

36. On or about January 21, 2020 the Debtor made a withdrawal by wire from the 9800 account of $12,078.23 (the "First Withdrawal"). The Debtor did not disclose the First Withdrawal and has not accounted for the funds. A true and correct copy of the statement for this account is attached to the Trustee's Declaration as **Exhibit "5"**.

37. On or about March 18, 2020, the Debtor made a deposit in the 9800 Account in the amount of $19,500.00 (the "First Deposit"). The Debtor did not disclose the First Deposit and has

-7-

HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240 Las Vegas, NV 89148
Telephone: (702) 720-3370 Facsimile: (702) 720-3371

not explained the source of the funds. A true and correct copy of the statement for this account is attached to the Trustee's Declaration as Exhibit "6".

38. In and around June 2020, the Debtor deposited approximately a combined $65,000.00 in the 4199 Account (the "Second Deposit"). The Debtor did not disclose the Second Deposit and has not explained the source of the funds. A true and correct copy of the statements for this account showing these deposits is attached to the Trustee's Declaration as **Exhibit "7"**.

39. In and around June 2020, the Debtor made combined withdrawal in the amount of approximately $68,000.00 in cash from the 4199 Account (the "Second Withdrawal"). The Debtor did not disclose the Second Withdrawal and has not accounted for the funds. *See* **Exhibit "7"** attached to the Trustee's Declaration.

40. During the course of her investigation of the Debtor's finances, the Trustee also identified various cash advances taken by the Debtor in the months preceding the petition date, contrary to his sworn statements.

41. On or about June 18, 2020, the Debtor took a cash advance in the amount of $4,500.00 from the NFCU credit card, account ending in 0957. A true and correct copy of the statements for this account showing this advance is attached to the Trustee's Declaration as **Exhibit "8"**.

42. On or about June 18, 2020, the Debtor took an $8,000.00 cash advance on his NFCU credit card, account ending in 2557. A true and correct copy of the statements for this account showing this advance is attached to the Trustee's Declaration as **Exhibit "9"**.

43. During her investigation of the Debtor's finances, the Trustee discovered multiple sham transactions made by the Debtor for the purposes of defrauding creditors.

44. Upon information and belief, the Debtor engaged in a series of sham transactions, wherein his alter ego "Johnny Moto" charged the Debtor's credit card for a non-existent sale. The Debtor, under the account of Johnny Moto, would charge his credit cards for an amount just below the limit on his credit account. The Debtor would then transfer the money received by Johnny Moto from his alter ego's account to his personal account.

. . .

45. On or about April 7, 2020, the Debtor opened a new Citibank credit account, account ending in 2315.

46. On or about June 3, 2020, the Debtor made a $4,000.00 purchase from Johnny Moto with the Citibank credit account ending in 2315. A true and correct copy of the statements for this account showing this transfer is attached to the Trustee's Declaration as **Exhibit "10"**.

47. On or about June 8, 2020, the Debtor made a payment of $6,500.00 to his Citibank credit account ending in 2315. Then, on or about June 9, 2020, the Debtor made a $6,400.00 purchase from "Johnny Moto" with the Citibank credit account ending in 2315. A true and correct copy of the statements for this account showing these transfers is attached to the Trustee's Declaration as **Exhibit "11"**.

48. Prior to the filing of the bankruptcy, the Debtor held a Citibank credit card account ending in 1180. After maintaining a zero balance on the account for several months, on or about June 3, 2020, the Debtor made an $8,000.00 purchase with "Johnny Moto." A true and correct copy of the statements for this account showing this transfer is attached to the Trustee's Declaration as **Exhibit "12"**.

49. Prior to the filing of the bankruptcy, the Debtor held a Citibank credit card account ending in 4983. On or about June 3, 2020 the Debtor made an $9,400.00 purchase from "Johnny Moto." On or about June 8, 2020, the Debtor made a payment of $11,500.00 on the account. Then on or about June 8, 2020, the Debtor made another $11,500.00 purchase from "Johnny Moto." A true and correct copy of the statements for this account showing these transfers is attached to the Trustee's Declaration as **Exhibit "13"**.

50. As a result of her investigation into the Debtor's finances, the Trustee was able to trace the source of the reduction in the principal balance of the Debtor's mortgage.

51. Based on documents provided in response to the NFCU Subpoena, on or about June 25, 2019, the Debtor made an additional principal payment of $6,063.51 A true and correct copy of the Debtor's mortgage statements showing this transfer is attached to the Trustee's Declaration as **Exhibit "14"**.

. . .

52. Based on documents provided in response to the NFCU Subpoena, on or about July 19, 2019, the Debtor made an additional principal payment of $61,120.51 to his mortgage company (the "Second Transfer" and together with the First Transfer, the "Transfers"). *Id*.

53. On February 2, 2021, the Trustee and the Debtor entered into a *Stipulation to Extend Deadline to Object to Debtor's Claim of Exemptions Pursuant to Federal Rule of Bankruptcy Procedure 4003* [ECF No. 50] that extended the deadline for the Trustee to object to the Debtor's exemptions until April 19, 2021.

54. On February 3, 2021, the Court entered an *Order Approving Stipulation to Extend Deadline to Object to Debtor's Claim of Exemptions Pursuant to Federal Rule of Bankruptcy Procedure 4003* [ECF No. 52].

55. Based on the Debtor's substantial fraud in this case, the Trustee believes that the Debtor made the Transfers for the purpose of harassing, hindering, delaying, or defrauding his creditors.

56. Accordingly, the Trustee now seeks an order disallowing the Debtor's claimed homestead exemption, or in the alternative, reducing the Debtor's claimed homestead exemption by $67,184.02, the amount of the Transfers.

## IV.  LEGAL ARGUMENT

**A.  Standard for Filing Objection to Debtor's Exemptions**

Section 541(a)(1) provides that the filing of a bankruptcy petition creates an estate that is comprised of all of the "legal and equitable interests of the debtor in property as of the commencement of the case." Notwithstanding Section 541, a debtor may exempt certain property from the bankruptcy estate pursuant to Section 522(b), which authorizes debtors to claim exemptions under the law of their state of domicile, or federal law if a debtor's state of domicile has not opted out of the federal exemptions. *See* 11 U.S.C. § 522(b)(1). However, any state may, by appropriate legislation, opt out of the federal exemption scheme, thereby granting to debtors only those exemptions expressly allowed by the law of that state. 11 U.S.C. § 522(b)(2) ("Property listed in this paragraph is property that is specified under subsection (d), unless the

State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.").

Section 522(l) provides the procedure for claiming exemptions and objecting to claimed exemptions as follows:

> The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section . . . Unless a party in interest objects, the property claimed as exempt on such list is exempt.

11 U.S.C. § 522(l).

Although Section 522(l) itself does not specify the time for objecting to a claimed exemption, FRBP 4003(b) provides, in part: "a party in interest may file an objection to the list of property claimed as exempt . . . within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension." FED. R. BANKR. P. 4003(b).

FRBP 4003(c) provides that the "objecting party has the burden of proving that the exemptions are not properly claimed." FED. R. BANKR. P. 4003(c). Once an exemption has been claimed, it is the objecting party's burden to prove that the exemption is not properly claimed. FED. R. BANKR. P. 4003(c). Initially, this means that the objecting party has the burden of production and the burden of persuasion. The objecting party must produce evidence to rebut the presumptively valid exemption. *In re Lester*, 141 B.R. 157, 161 (S.D. Ohio 1991). If the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper. *See In re Moneer*, 188 B.R. 25, 28 (Bankr. N.D. Ill. 1995); FED. R. EVID. 301.

**B.      The Homestead Exemption is Not a Vehicle for Fraud**

N.R.S. § 21.090(l) provides that bankruptcy debtors are permitted to claim "[t]he homestead as provided for by law, including a homestead for which allodial title has been established and not relinquished and for which a waiver executed pursuant to N.R.S. 115.010 is not applicable." *Id.*  The validity of any homestead exemption must be evaluated as of the date of

-11-

the filing of the petition. *In re Sullivan*, 200 B.R. 682, 684 (Bankr.D.Nev.1996) (citing *Myers v. Matley*, 318 U.S. 622, 628, 63 S.Ct. 780, 87 L.Ed. 1043 (1943)). To secure the benefits of Nevada's homestead protection, a debtor must record a declaration of homestead. *Id.* Once properly recorded, the exemption of "a quantity of land, together with a dwelling house" is limited only by the actual residence of the debtor on the premises with the intent to use and claim the property as a homestead. *In re Trigonis,* 224 B.R. 152 (Bankr.D.Nev.1998). It is axiomatic there cannot be a homestead absent residence. *In re Sullivan,* 200 B.R. 682, 685 (Bankr.D.Nev.1996). Only where the parties actually live on a piece of land and make it their bona fide home.

In addition to the limitations on the Nevada homestead contained within the statute, the Nevada Supreme Court has also found that the Nevada homestead is inapplicable where the homestead would be used as an instrument of fraud or imposition. In the case of *Maki v. Chong*, 119 Nev. 390, 75 P.3d 376 (Nev.2003), the Nevada Supreme Court held:

> "The homestead exemption statute cannot be used as an instrument of fraud and imposition." [citation in footnote omitted] Public policy supports our application of an exception to homestead exemptions for victims of fraud or similar tortious conduct. An individual using fraudulently obtained funds to purchase real property should not be protected by the homestead exemption because the exemption's purpose is to provide protection to individuals who file the homestead exemption in good faith.

*Id*. 119 Nev. at 393, 75 P.3d at 379.

In this case, denial of the Debtor's claimed homestead is proper because the Debtor has attempted to use the homestead as an instrument to further his fraud and other tortious conduct. The Debtor's pattern of fraud is well established. The Debtor disposed of significant assets, incurred substantial debt with no intention to repay, concealed his assets, and attempted to use the homestead to shield funds while defrauding his creditors. To allow the Debtor's homestead exemption to stand would be to allow the Nevada statutes to be used as a vehicle for fraud and imposition. The equity the Debtor seeks to exempt under the Nevada homestead exemption is derived from fraudulent and quite possibly criminal activity and, therefore, pursuant to the Court's holding in *Maki,* the Debtor's homestead exemption should be disallowed.

### C. The Debtor's Homestead Exemption Must Be Reduced by $67,184.02 Pursuant to Section 522(o)

Under Section 522(b)(3)(A), property claimed as exempt under state law is subject to the provisions of Section 522(o). Under Section 522(o)(4), "the value of an interest in" real property that a debtor claims as a homestead "shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10–year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not <u>exempt</u>, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of." *Id*. (Emphasis added.)

In determining whether a debtor disposed of nonexempt assets with intent to hinder, with intent to delay, or with intent to defraud a creditor under Section 522(o), the traditional "badges of fraud" employed in the fraudulent transfer context are often applied. *In re Stanton*, 457 B.R. 80, 92-93 (Bankr. D. Nev. 2011), citing, e.g., *Addison v. Seaver (In re Addison)*, 540 F.3d 805 (8th Cir. 2008), and *In re Maronde*, 332 B.R. 593 (Bankr.D.Minn. 2005).

The nonexclusive list of badges indicating fraud include whether: (1) the transfer was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer was disclosed or concealed; (4) the debtor was sued or threatened with suit before the transfer; (5) the transfer was of substantially all of the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the consideration received was reasonably equivalent to the value of the asset transferred; (9) the debtor was insolvent or became insolvent shortly after the transfer; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of a business to a lienor who then transferred the assets to an insider. *See Stanton*, 457 B.R. at 93, citing UNIF. FRAUDULENT TRANSFER ACT § 4(b) (1984).

Here, the Debtor's Homestead exemption must be reduced. The Debtor converted approximately $67,184.02 from his non-exempt certificate of deposit account into equity in his principal residence. This Transfer was made with the intent to harass, hinder, delay, or defraud his

-13-

creditors as evidenced by the presence of multiple badges of fraud. The Transfer was for the benefit of the Debtor, as it was transferred to increase the equity in the Property, the Debtor's principal residence. The Debtor retained possession and control of the Property and seeks to use his homestead exemption to continue in possession and control thereof after the filing of his bankruptcy case. The Debtor concealed this transaction and failed to disclose the Transfer on his bankruptcy statements and schedules. The Transfer appears to have been all or substantially all of the Debtor's assets at the time of the Transfer. The Debtor appears to have (intentionally) become insolvent after the Transfer was made as he incurred large credit card balances and failed to repay them. Finally, the Debtor incurred over one hundred thousand dollars of personal credit card debt in the year after the Transfer was made. This debt includes cash advances and fraudulent charges which were made by the Debtor for the purpose of defrauding his creditors. Given the presence of so many badges of fraud, the only rational conclusion is the Debtor made the Transfer for the purpose of harassing, hindering, delaying, or defrauding his creditors. Accordingly, the Debtor's claimed homestead exemption must be reduced in the amount of $67,184.02.

**D.    In the Alternative, the Debtor's Homestead Exemption Should Be Limited to $170,350.00 Pursuant to Section 522(p)**

The Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), imposes a limitation on the homestead exemption a debtor can claim, regardless of the applicable state law exemptions. Specifically, Section 522(p)(1) prevents a debtor from exempting certain interests from the bankruptcy estate if they were acquired by a debtor one thousand two hundred fifteen (1,215) days prior to a bankruptcy filing, and the fair market value of the asset exceeds $170,350.00. The statute reads, in pertinent part:

> Except as provided in paragraph (2) of this subsection and subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds the aggregate $170,375.00 in value in —
> (A) Real or personal property that the debtor or a dependent of the debtor uses as a residence.
>
> . . . or

-14-

>  (D) Real or personal property that the debtor or a dependent
>  of the debtor claims as a homestead.

*See* 11 U.S.C. § 522(p).

In the event that the Court determines that the homestead exemption claimed by the Debtor should not be disallowed and/or reduced, the Debtor's homestead exemption should be limited to $170,350 pursuant to Section 522(p) because the Debtor acquired his interest in the Property on April 22, 2019, five hundred and forty-two (542) days prior to the Petition Date.

### V. CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order (i) sustaining the Objection in its entirety; and (ii) for such other and further relief as is just and proper.

In the alternative, the Debtor's homestead exemption should be limited to $170,375 pursuant to Section 522(p).

Dated this 16th day of April, 2021.

**HOUMAND LAW FIRM, LTD.**

By: */s/ Bradley G. Sims*
Jacob L. Houmand, Esq. (NV Bar No. 12781)
Bradley G. Sims, Esq. (NV Bar No. 11713)
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone:  702/720-3370
Facsimile:   702/720-3371

*Counsel for Shelley D. Krohn, Chapter 7 Trustee*
