Jacob L. Houmand, Esq. (NV Bar No. 12781)
Email: jhoumand@houmandlaw.com
Bradley G. Sims, Esq. (NV Bar No. 11713)
Email: bsims@houmandlaw.com
HOUMAND LAW FIRM, LTD.
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone:    702/720-3370
Facsimile:    702/720-3371

*Counsel for Shelley D. Krohn, Chapter 7 Trustee*

*Electronically Filed On: May 24, 2021*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>JOHN ELVIS MAYOL,<br><br>Debtor. | Case No. BK-S- 20-15171-NMC<br>Chapter 7<br><br>**REPLY TO RESPONSE TO TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION**<br><br>Date of Hearing:    June 8, 2021<br>Time of Hearing:    2:00 p.m.<br>Place: Courtroom No. 3, Third Floor<br>              Foley Federal Building<br>              300 Las Vegas Blvd., S.<br>              Las Vegas, NV 89101<br><br>Judge: Honorable Mike K. Nakagawa[1] |

Shelley D. Krohn (the "Trustee"), the duly appointed Chapter 7 Trustee in the above-captioned bankruptcy case, by and through her counsel of record, Jacob L. Houmand, Esq. and Bradley G. Sims, Esq. of the Houmand Law Firm, Ltd., hereby submits this *Reply to Response to Trustee's Objection to Debtor's Claim of Exemption* (the "Reply").

The Reply is based on the following Memorandum of Points and Authorities, the pleadings and papers on file herein, and any argument that may be entertained at the hearing on

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure will be referred to as "FRCP" and the Federal Rules of Bankruptcy Procedure will be referred to as "FRBP." The Local Rules of Practice for the United States Bankruptcy Court for the District of Nevada shall be referred to as the "Local Rules".

-1-

the *Objection to Debtor's Claim of Exemptions Pursuant to 11 U.S.C. § 522(l) and Federal Rule of Bankruptcy Procedure 4003* [ECF No. 67] (the "Objection").[2]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

The Debtor has committed extensive fraud with respect to his creditors and seeks to use the Nevada exemptions to shield assets while defrauding his creditors. The Objection seeks an order disallowing the Debtor's homestead exemption based on the Debtor's copious fraud. The Nevada homestead exemption, however, is not available to be used as a vehicle for fraud or imposition. Accordingly, the Debtor is not entitled to the benefits of the Nevada Homestead exemption. To the degree this court finds he is entitled to such an exemption, that exemption should be reduced by $67,184.02 based upon the Debtor's fraud.

The Debtor filed a *Response to Trustee's Objection to Debtor's Claim of Exemption* (the "Opposition") that does not meaningfully address the arguments set forth in the Objection, or the exhibits attached to the Trustee's Declaration. Instead, the Opposition offers only self-serving denials and provides no credible or admissible evidence in support of the Debtor's claim of exemption. The Debtor is not entitled to the exemptions as set forth in the Objection as a matter of law and the Objection must be sustained.

### II.  LEGAL ARGUMENT

**A.  The Trustee has a Duty to Object to the Debtor's Improper Exemption.**

In the Opposition, the Debtor appears to suggest that it is improper or unusual for the Trustee to object to his improper exemption. It is unclear why the Debtor believes the Objection is improper. FRBP 4003(b) permits a trustee, or other party in interest, to file an objection to the list of property claimed as exempt within thirty days of its filing. *In re Daly*, 344 B.R. 304 (Bankr. M.D. Pa. 2005). The Bankruptcy Code imposes upon trustees the duty to object to claims of exemption that are improper. *See In re Leach*, 595 B.R. 841 (Bankr. D. Idaho 2018). The Trustee

---

[2] The Trustee also requests that the Court take judicial notice of all pleadings filed in the above-referenced bankruptcy case, including adversary proceedings, pursuant to Federal Rule of Evidence 201, incorporated by reference by FRBP 9017.

-2-

did not "take it upon herself" as the Debtor suggests in the Opposition. It is her statutory duty and obligation to the Debtor's improper exemption. For these reasons, the Objection is proper.

**B.     The Debtor Has the Burden of Proving that An Exemption Is Valid.**

Section 541(a)(1) provides that the filing of a bankruptcy petition creates an estate that is comprised of all of the "legal and equitable interests of the debtor in property as of the commencement of the case." Notwithstanding Section 541, a debtor may exempt certain property from the bankruptcy estate pursuant to Section 522(b), which authorizes debtors to claim exemptions under the law of their state of domicile, or federal law if a debtor's state of domicile has not opted out of the federal exemptions. *See* 11 U.S.C. § 522(b)(1). However, any state may, by appropriate legislation, opt out of the federal exemption scheme, thereby granting to debtors only those exemptions expressly allowed by the law of that state. 11 U.S.C. § 522(b)(2) ("Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.").

While FRBP 4003 places the initial burden on the objecting party, where, as in this case, the exemption arises under state law, "bankruptcy does not alter the burden imposed by the substantive law." *Diaz v. Kosmala (In re Diaz)*, 547 B.R. 329, 337 (B.A.P. 9th Cir. 2016) (citing *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20-21 (2000)). The Ninth Circuit BAP concluded in *Diaz* that "where the state law exemption statute specifically allocates the burden of proof to the debtor, Rule 4003(c) does not change that allocation." *Diaz*, 547 B.R. at 337; *see also In re Ziegler*, No. 8:13-BK-20257-CB, 2016 WL 3267387, at *4 (B.A.P. 9th Cir. June 6, 2016) (reasserting the holding in *Diaz* and concluding that the burden was on the debtor to show that his amended wildcard exemption for the sale proceeds was proper).

In *In re Pashenee*, 531 B.R. 834 (Bankr. E.D. Cal. 2015), a Debtor claimed an exemption for an IRA and the chapter 7 trustee objected. The court held that the debtor had the burden of proving by a preponderance of the evidence that the IRA was exempt under California law. *Id.* at 837. The court began its analysis by explaining that California has opted out of the federal exemptions and that California exemptions must be determined in accordance with state law. *Id.*

-3-

at 838. That court relied on *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15 (2000), for the proposition that "bankruptcy does not alter the burden of proof imposed by substantive law" as well as on *Law v. Siegel*, 134 S. Ct. 1188, 1196-97 (2014), for the principle that "when a debtor claims a state-created exemption, the exemption's scope is determined by state law." *Id.* at 838-39.

Numerous courts have reached the same conclusion as the *Pashenee* court. *See, e.g.*, *In re Tallerico*, 532 B.R. 774, 776 (Bankr. E.D. Cal. 2015) ("Federal Rule of Bankruptcy Procedure 4003(c) is invalid to the extent it assigns the burden of proof on an objection to a state-law claim of exemption in a manner contrary to state law."); *In re Williams*, 556 B.R. 456, 460 (Bankr. C.D. Cal. 2016) (holding that the burden of proof was on the debtor to show that she was entitled to the California state-law exemption); *In re Diaz*, 547 B.R. 329, 337 (B.A.P. 9th Cir. 2016) ("[W]here a state law exemption statute specifically allocates the burden of proof on the debtor, Rule 4003(c) does not change that allocation.").

Like California, Nevada has opted out of the federal exemptions pursuant to NRS § 21.090(3), and NRS § 21.090(1) provides a series of different categories of property that are exempt from execution. As an opt-out state, the Nevada exemptions must be determined in accordance with Nevada law. Pursuant to Nevada law, "[t]he judgment debtor has the burden to prove that he or she is entitled to the claimed exemption at such a hearing." N.R.S. § 21.112(6). As the Debtor's claimed exemptions are state-created, the scope of the exemptions is determined by state law, and state law unequivocally places the burden of proving that the exemption is proper upon the Debtor.

Here, the burden in on the Debtor to establish that he is entitled to the exemption he asserts under Nevada State law. The Debtor has not shouldered that burden, or even attempted to do so. The Debtor has made no attempt to rebut the allegation in the Trustee's Objection, aside from self-serving, unsworn denials. The Opposition fails in any meaningful way to address the objections raised by the Trustee and establish an entitlement to the Nevada homestead exemption.

Even if the Nevada statutes did not place the burden on the Debtor to establish the validity of his exemption, the Debtor is still required to prove that the exemption is valid once the Trustee

has satisfied her burden. Under FRBP 4003, claimed exemptions are presumptively valid, and the objecting party bears the burden of proving that an exemption is not properly claimed. *See, e.g., Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029–30 n. 3 (9th Cir.1999). The standard of proof is by a preponderance of the evidence. *See Leavitt v. Alexander (In re Alexander)*, 472 B.R. 815, 821 (9th Cir. BAP 2012). "The burden of showing something by a 'preponderance of the evidence,' ... 'simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence.' " *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for So. Cal.*, 508 U.S. 602, 622 (1993). Once the objecting party produces evidence to rebut the presumption, the burden shifts to the debtor to present "unequivocal evidence to demonstrate the exemption is proper." *Id.*

Here, as detailed below, the Trustee has shown by preponderance of the evidence that the Debtor has engaged in fraud with respect to the Trustee, the Debtor's creditors, and this Court. The preponderance of the evidence establishes that the Debtor is not entitled to the homestead exemption he claims under state law. The Debtor is required to present unequivocal evidence to demonstrate the exemption is proper. The Debtor has presented no evidence that his homestead exemption is proper. The Debtor has simply offered oblique denials and no evidence in contravention of the evidence presented in the Objection. The Debtor has not met his burden, and as a result, this Court should disallow the Debtor's homestead exemption.

**C.    Fraud Disqualifies a Debtor from Claiming the Nevada Homestead Exemption.**

When an exemption is claimed under state law, the validity of that exemption is determined in accordance with state law. *In re Kelley*, 300 B.R. 11, 16 (B.A.P. 9th Cir. 2003). The Nevada homestead exemption is not available to those who engage in fraud. *Maki v. Chong*, 75 P.3d 376 (Nev. 2003). Within the Opposition, the Debtor does not dispute that Nevada exemptions do not extend to protect those engaging in fraud. Because the Debtor has engaged in substantial fraud, the Debtor does not fall within the class of people the intended to be protected by the Nevada Homestead exemption. The Trustee's objection to the Debtor's exemption is appropriate and should be sustained.

**D.    The Debtor Has Engaged in Substantial Fraud.**

Within the Opposition, the Debtor appears to contend that he did not commit fraud. The Debtor does not support this contention with a sworn declaration, or other admissible evidence. The Debtor explains none of the omissions and outright lies present in his statements and schedules. In fact, there is substantial evidence of fraud and malfeasance on the part of the Debtor. Below is a non-exclusive list of some of the indications of fraud:

1.    The Debtor did not disclose a certificate of deposit worth tens of thousands of dollars and that he used the undisclosed certificate of deposit to reduce the principal balance of his mortgage. The Debtor, as of the filing of this Reply, has not amended his schedules and statements to disclose the certificate of deposit, or the transfer of the funds to his mortgage company.

2.    The Debtor testified multiple times under oath and in sworn testimony that he did not sell any vehicles in 2020. However, the Debtor then provided a sworn declaration admitting that was not the case. The Debtor maintains that he sold vehicles for other people, however, the Debtor only disclosed these transfers after months of denying any transfers occurred, and only admitted to transfers after his 341 meeting had been concluded, and after he was presented with pictures of vehicles that had been sold from his Offerup account. The Debtor was ordered by this Court to turnover access to his Offerup account and has failed to do so. Accordingly, the Trustee in entitled to the negative inference that the Debtor was selling vehicles, contrary to his testimony, and has not reported that income. *See Evans v. Robbins*, 897 F.2d 966, 970 (8th Cir.1990) (drawing inference against debtor in turnover action when the debtor failed to produce documents under his control allegedly supporting debtor's claims); *Chemical Bank v. Affiliated FM Ins. Co.*, 154 F.R.D. 91, 94 (S.D.N.Y.1994) ("An adverse inference against a party may be drawn when its litigation conduct is such that a fact finder could infer that attempts to interfere with pursuit of the merits were made because of the party's awareness of [the] weakness of its position."). Once more, as of the time of the filing of this Reply, the Debtor has not amended his statements or schedules to disclose the sale of any vehicles.

. . .

3. The Second Declaration[3] states: "Most of my credit card debt was accumulated in late 2019 to the summer of 2020 through balance transfers to pay business credit cards, visit family, or for living expenses, but I was not intending on filing bankruptcy at the time I was incurring the debt. I had hoped that business would pick up after the pandemic." This statement is signed by the Debtor, under penalty of perjury. However, the credit card statements obtained by the Trustee show that this is not an honest statement. The Debtor incurred substantial debts, by running up his credit cards with purchases at "Johnny Moto" which the Debtor does not deny is his business. Because the Debtor did not turn over the records to his business, the Trustee is entitled to the negative inference that records show that the Debtor was using his business to charge large sums on his personal credit cards and then pocketing the funds.

4. The Debtor did not disclose his Navy Federal Credit Union account ending in 9784, 4199, 5362, 9800, or 9784 on his Schedule A/B, or on his Statement of Financial Affairs. The Debtor only disclosed Navy Federal Credit Union Accounts ending in 2670 and 5836. The Debtor's Amended Statement of Financial Affairs does not disclose any closed accounts with Navy Federal Credit Union. The Debtor provided no statements for these accounts, even though he was required to do so. The Trustee only found out about these accounts because of a subpoena that she served on Navy Federal Credit Union. The Debtor has not explained the source of large deposits that do not correlate with the income statements he has thus far provided to the Trustee, and that he has listed on his Amended Statement of Financial Affairs. The Debtor has provided no explanation for the large deposits in bank accounts that he refused to disclose to the Trustee. The Debtor has not accounted for how these funds were spent. The Debtor's conduct with regard to these funds is intended to defraud his creditors.

5. The Debtor's Amended Statement of Financial Affairs discloses a year-to-date gross income of $16,067.00. However, the Debtor's bank statements show deposits in excess of this amount and does not correlate with the income statements the Debtor has provided. The

---

[3] Unless otherwise set forth herein, all defined terms shall have the same meaning ascribed to them in the Objection.

-7-

deposits were not disclosed, and the Debtor has made not explanation for the origin of these funds.

6. The Debtor's credit card statements likewise document significant activity that was undisclosed by the Debtor. Importantly, the Debtor was asked to provide his credit card statements and failed to do so. The Trustee was required to issue a subpoena to obtain these records. The statements show that the Debtor took numerous cash advances for thousands of dollars, none of which were disclosed by the Debtor. The Debtor has not disclosed the disposition of any of the funds he obtained through cash advances. The credit card statements also show that the Debtor spent tens of thousands of dollars on purchases from "Johnny Moto" which the trustee alleges is the Debtor's alter ego. The Debtor has not specifically denied that this is his alter ego, has never provided the account records for his Square Account, and has refused to comply with the Court's order requiring him to provide the Trustee with access to his Offerup account. The Court may infer from the Debtor's actions that the Debtor used his alter ego to charge his personal credit cards thousands of dollars through the payment platform Square. The Court may also note that shortly after the transfers to the Debtor's alter ego, the Debtor transferred large sums from the payment platform Square to his personal bank account. The Court may also note that the bank account which received these transfers was undisclosed, and as of the writing of this Reply, has not been disclosed within the Debtor's statements or schedules. Even if Johnny Moto was not the Debtor's alter ego, the Debtor has failed to explain the items that were purchased in the months preceding his bankruptcy filing that amounted to tens of thousands of dollars.

The overwhelming weight of the evidence presented is that the Debtor has committed fraud. The Debtor did not provide any admissible evidence rebutting the allegations of fraud, did not address *any* of the exhibits attached to the Trustee's declaration, and has not carried his burden to establish that he is eligible to claim a homestead exemption under Nevada law. Accordingly, the Trustee's Objection should be sustained.

. . .

. . .

. . .

-8-

**E.     To the Degree that the Debtor has Established a Valid Homestead, that Exemption Should be Reduced by $67,184.02.**

To the degree that the Debtor has established any entitlement to the Nevada homestead exemption, Section 522(o) provides that where the Debtor has disposed of non-exempt funds for the purpose of harassing, hindering, or delaying a creditor, the exemption should correspondingly be reduced. The burden is on the Trustee to prove by a preponderance of the evidence that disposed of non-exempt property with the requisite intent. *In re Lacounte*, 342 B.R. 809, 813 (Bankr. D. Mont. 2005). Because this type of fraud is generally difficult to establish, it is generally inferred from the presence of various badges of fraud. *In re Stanton*, 457 B.R. 80, 92-93 (Bankr. D. Nev. 2011), citing, e.g., *Addison v. Seaver (In re Addison)*, 540 F.3d 805 (8th Cir. 2008), and *In re Maronde*, 332 B.R. 593 (Bankr.D.Minn. 2005). The nonexclusive list of badges indicating fraud include whether: (1) the transfer was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer was disclosed or concealed; (4) the debtor was sued or threatened with suit before the transfer; (5) the transfer was of substantially all of the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the consideration received was reasonably equivalent to the value of the asset transferred; (9) the debtor was insolvent or became insolvent shortly after the transfer; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of a business to a lienor who then transferred the assets to an insider. See *Stanton*, 457 B.R. at 93, citing UNIF. FRAUDULENT TRANSFER ACT § 4(b) (1984).

The Debtor contends that there are no badges of fraud present in this case. That is not correct. In fact, a number of the badges of fraud are present as detailed herein.

   *i.     The transfer was to an insider*

Here, the Transfer was invariably to an insider. The debtor's claimed exempt asset is enhanced by the disposition of a non-exempt asset and is thus a transfer of value to an insider. *In re Addison*, 540 F.3d 805, 814 n.12. (8th Cir. 2008).

. . .

-9-

    ii.    *The debtor retained possession or control of the property transferred after the transfer*

There is no dispute the Debtor retained control of the asset after the Transfer as it reduced the mortgage balance on his principal residence.

    iii.    *The transfer was disclosed or concealed*

The Transfer in this case was concealed. The Debtor did not disclose the Transfer until confronted with evidence that he was lying and has still not amended his schedules and statements to disclose the Transfer.

    iv.    *The transfer was of substantially all of the debtor's assets*

It is difficult to know whether the transfer was of all or substantially all of the Debtor's assets, given the Debtor's dedication to concealing assets in this case. However, based upon the information disclosed by the Debtor, the Transfer constituted the majority of the Debtor's non-exempt assets.

    v.    *The debtor removed or concealed assets*

The Debtor has concealed assets. The Debtor concealed bank accounts, income, and cash that he apparently had on hand.

    vi.    *The debtor was insolvent or became insolvent shortly after the transfer.*

The Debtor conflictingly states that he had little credit card debt at the time of the Transfer, but shortly thereafter was forced to undertake balance transfers of significant debt. This factor is further aggravated by the fact that the Debtor appears to have borrowed large sums from unsecured credit cards with absolutely no intention of repaying the same. At the very least, it appears that the Debtor intended to make himself insolvent or feign insolvency shortly after the Transfer.

    vii.    *The transfer occurred shortly before or shortly after a substantial debt was incurred*

There is no dispute that this factor is met. The Debtor withdrew a certificate of deposit and used the funds to reduce the principal balance of the mortgage secured by his principal residence and then filed his bankruptcy case. Shortly before filing for bankruptcy, the Debtor maxed out his

-10-

credit cards through a series of balance transfers, cash advances, and sham transactions. The Debtor pocketed these funds, waited a few months, and filed bankruptcy. The Debtor failed to disclose and took steps to hide all of this activity.

As detailed above, multiple badges of fraud are present in this case. The preponderance of the evidence clearly shows that there was an increase in the value of the Debtor's homestead, that this increase was attributable to disposition of nonexempt assets, multiple badges of fraud are present which indicate an intent to hinder, delay or defraud the Debtor's creditors, and the disposition occurred within ten years prior to the petition date. To the degree that this Court finds the Debtor is entitled to any homestead exemption that exemption must be reduced by the sum of the transfers, which is $67,184.02.

**F.     The COVID-19 Pandemic is Not a License to Commit Fraud.**

Within the Opposition, the Debtor makes the astonishing claim that the Debtor's extensive fraud is somehow excusable because of the COVID-19 pandemic. It is unclear why COVID-19 prevented the Debtor from accurately and completely documenting his finances on his statements and schedules, why it prevented him from disclosing his assets, and why it caused him to steal thousands of dollars from his creditors. The COVID-19 pandemic has caused many individuals to seek bankruptcy protection. This Court is, and has always been, instituted to afford relief to the honest, but unfortunate. *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (internal quotations omitted). The Debtor here is not an honest or unfortunate victim of the COVID-19 pandemic. The Debtor has purposefully and intentionally committed fraud and is not the type of individual that is intended to be protected by the Bankruptcy Code or Nevada state exemptions. As such, the Trustee's objection should be sustained and the Debtor's homestead exemption should be disallowed.

**G.     In the Alternative, the Debtor's Homestead Exemption Should Be Limited to $170,350.00 Pursuant to Section 522(p).**

The Debtor's Opposition suggests that the request to limit the Debtor's homestead to $170,350.00 Pursuant to Section 522(p) should be denied based on the Debtor's denials of fraud and, again, the COVID-19 pandemic. Section 522(p) is dependent on any motive or conduct of

the Debtor. It is a statutory cap on an available homestead based on length of ownership of the Property. The only relevant question under Section 522(p) is whether the Debtor has owned the Property less that the required 1,215 days. In this case, the Debtor acquired the Property on April 22, 2019, five hundred and forty-two (542) days prior to the Petition Date. That is less than 1215 days. The Debtor's homestead, to the degree than all other objections are denied, is properly limited to $170,350.00 as a matter of math, and of law.

### V. CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that the Court enter an order: (i) sustaining the Objection in its entirety; and (ii) for such other and further relief as is just and proper.

Dated this 24th day of May, 2021.

**HOUMAND LAW FIRM, LTD.**

By: */s/ Bradley G. Sims*
Jacob L. Houmand, Esq. (NV Bar No. 12781)
Bradley G. Sims, Esq. (NV Bar No. 11713))
9205 West Russell Road, Building 3, Suite 240
Las Vegas, NV 89148
Telephone: 702/720-3370
Facsimile:  702/720-3371

*Counsel for Shelley D. Krohn, Chapter 7 Trustee*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of May, 2021 I caused to be served a true and correct copy of REPLY TO RESPONSE TO TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTION in the following manner:

☒ (CM/ECF ELECTRONIC SERVICE) By electronically filing the above-referenced document via the CM/ECF service to the parties listed below on the date above written:

ACAR LEASING LTD., DBA GM FINANCIAL LEASING
jeff@jsloanelaw.com;kristi@jsloanelaw.com

JACOB L. HOUMAND on behalf of Plaintiff SHELLEY D. KROHN
jhoumand@houmandlaw.com, bsims@houmandlaw.com;2082209420@filings.docketbird.com

SHELLEY D KROHN
shelley@trusteekrohn.com,
NV27@ecfcbis.com;becca@trusteekrohn.com;jan@trusteekrohn.com;candace@trusteekrohn.com

LISA A RASMUSSEN on behalf of Debtor JOHN ELVIS MAYOL
Lisa@veldlaw.com, diana@veldlaw.com

LISA A RASMUSSEN on behalf of Defendant JOHN ELVIS MAYOL
Lisa@veldlaw.com, diana@veldlaw.com

BRADLEY G SIMS on behalf of Plaintiff SHELLEY D. KROHN
bsims@houmandlaw.com, jhoumand@houmandlaw.com

BRADLEY G SIMS on behalf of Trustee SHELLEY D KROHN
bsims@houmandlaw.com, jhoumand@houmandlaw.com

JEFFREY G. SLOANE on behalf of Creditor ACAR LEASING LTD., DBA GM FINANCIAL LEASING
jeff@jsloanelaw.com, Kristi@jsloanelaw.com

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

U.S. TRUSTEE - LV - 7
USTPRegion17.LV.ECF@usdoj.gov

    Dated this 24th day of May, 2021.

                                         **HOUMAND LAW FIRM, LTD.**

                                         By: */s/ Bradley G. Sims*
                                         Jacob L. Houmand, Esq. (NV Bar No. 12781)
                                         Bradley G. Sims, Esq. (NV Bar No. 11713))
                                         9205 West Russell Road, Building 3, Suite 240
                                         Las Vegas, NV 89148
                                         Telephone: 702/720-3370
                                         Facsimile:  702/720-3371

                                         *Counsel for Shelley D. Krohn, Chapter 7 Trustee*